# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BRIDGET DINVAUT | CIVIL ACTION |
| VERSUS | No. 17-5630 |
| CAMBRIDGE ENERGY CORP. ET AL. | SECTION I |

## ORDER AND REASONS

One could reasonably assume that, after hundreds of volumes of the *United States Reports* and thousands of volumes of the *Federal Reporter* and the *Federal Supplement*, the federal courts would always know what a federal case is. But that is not true.

To be sure, the determination is easy in the vast majority of cases. As a general matter, "[a] suit arises under the law that creates the cause of action." *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916). So a case brought pursuant to a federal cause of action is almost always a federal case. The converse is also true: a case brought pursuant to a state cause of action is almost always *not* a federal case.

*Almost* always, but not *always* always. A formally federal cause of action may not be a federal case when it has an "overwhelming predominance of state-law issues." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 814 n.12 (1986); *see, e.g.*, *Shoshone Mining Co. v. Rutter*, 177 U.S. 505 (1900). And some formally state law causes of action can nonetheless be federal cases when they necessarily implicate substantial issues of federal law. *See, e.g.*, *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921).

Given the inherent vagueness in both inquiries, the federal courts have been unable "to frame a single, precise definition for determining which cases fall within, and which cases fall outside, the original jurisdiction of the district courts." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 8 (1983). As a result, district court judges have instead been told to apply their "common-sense . . . judgment" to the "kaleidoscop[e]" of cases that appear on their dockets. *Gully v. First Nat'l Bank*, 299 U.S. 108, 117 (1936) (Cardozo, J.). That kaleidoscope of cases has fittingly resulted in a body of case law that looks like a canvas "that Jackson Pollock got to first." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

The pending motion to remand, *see* R. Doc. No. 11, asks this Court to determine whether formally state law claims constitute a federal case within this Court's jurisdiction. The Court concludes that the answer to that question is no.

## I.

This case is one of many where the State of Louisiana and local parishes are attempting to determine the oil industry's responsibility for the deteriorating condition of Louisiana's wetlands.

## A.

Louisiana's State and Local Coastal Resources Management Act of 1978 manages Louisiana's coastal zone through a permitting scheme. Under the Act, any party seeking to "use" the coastal zone needs to apply for a coastal use permit. *See* La. R.S. 49:214.30(A)(1). A party "uses" the coastal zone when it engages in any activity which "has a direct and significant impact on coastal waters." La. R.S.

49:214.23(13). The state issues permits that relate to uses of state concern; local governments with approved programs issue permits for uses of local concern. *See* La. R.S. 49:214.25.

Plaintiff Bridget Dinvaut is the district attorney for St. John the Baptist Parish. The Act empowers Dinvaut, as the district attorney, to bring an enforcement action for unpermitted uses of the coastal zone. *See* La. R.S. 49:214.36(D). Dinvaut brings suit against a number of companies and individuals involved in oil exploration and extraction in St. John Parish. The suit alleges that defendants violated the Act and its implementing regulations by engaging in unpermitted uses of the coastal zone. Dinvaut asks for damages for past violations of the Act as well as either (1) a monetary award to pay for the restoration of the coastal zone or (2) a court order that the defendants restore the coastal zone. *See* St. Ct. Pet. ¶ 37(a)-(c).

Dinvaut's petition is also notable for what it disclaims. The petition disclaims any claim arising under federal law and/or federal regulations, and further clarifies that Dinvaut raises no claim that the defendants violated a federal permit or failed to obtain a federal permit. *See* St. Ct. Pet. ¶ 32.

**B.**

Notwithstanding Dinvaut's seeming waiver of every federal cause of action—a waiver that will bind Dinvaut through this litigation, *see, e.g., Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710, 715 & n.28 (5th Cir. 2015)—defendants believe that this case arises under federal law. So they removed the case to this Court. *See* 28 U.S.C. § 1441(a). They offer two theories of how this is a federal case:

3

- Remedies-based jurisdiction: Defendants argue that the St. John the Baptist Parish coastal zone is governed by an extensive array of federal laws and regulations, and that Dinvaut's requested remedy—restoration of the coastal zone, to the extent feasible and practical—will near-inevitably require some federal permitting from the Army Corps of Engineers.
- Activities-based jurisdiction: Defendants argue that Dinvaut seeks to impose liabilities for activities that were governed by federal permits, and that federal law must be applied to determine whether a federal permit has been violated.

Dinvaut unsurprisingly disagrees and moves to remand the case on the ground that this Court lacks jurisdiction over her state law claims.

## II.

### A.

28 U.S.C. § 1331 grants this Court original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Meanwhile, the Constitution extends the judicial power to "all Cases . . . arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority." U.S. Const. art. III, § 2, cl. 1.

Notwithstanding the similar language in both provisions, "Article III 'arising under' jurisdiction is broader than federal question jurisdiction under § 1331." *Verlinden B.V. v. Central Bank of Nig.*, 461 U.S. 480, 495 (1983). Section 1331 only permits courts to exercise jurisdiction when the federal question is apparent on the face of a well-pleaded complaint. *See, e.g., Louisville & Nashville R. Co. v. Mottley*,

211 U.S. 149 (1908). Article III, by contrast, permits the theoretical expansion of the federal judicial power to any case where there is a federal "ingredient" in the matter—regardless of whether the federal issue is contested or actually litigated. *See Osborn v. Bank of the U.S.*, 22 U.S. (9 Wheat) 738, 823-25 (1824); *see also* 13D Wright and Miller, *Federal Practice & Procedure* § 3562, at 178-80 (3d ed. 2008). The difference between the two provisions is why, for example, Congress can permit removal based on certain federal defenses, *see, e.g.*, 28 U.S.C. § 1442(a) (federal officer removal statute), notwithstanding the general rule that federal defenses do not give rise to jurisdiction under Section 1331's well-pleaded complaint rule, *see Gully*, 299 U.S. at 113.

This case concerns only this Court's power under Section 1331. That means the defendants have to show that a federal question exists on the face of Dinvaut's complaint, "unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." *Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914); *see also Franchise Tax Bd.*, 463 U.S. at 9-13.

Dinvaut's cause of action is based on Louisiana's State and Local Coastal Resources Management Act. So defendants cannot establish that Dinvaut's claims are federal claims under the *American Well Works* test. *See* 241 U.S. at 260. Instead, defendants have to rely on a far narrower category of federal cases: cases that, while formally based on state-law claims, necessarily turn on a substantial question of federal law. *See Grable & Sons Metal Prods., Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312 (2005).

5

To establish that Dinvaut's formally state law claims arise out of federal law, defendants must show "more than a federal element to open the 'arising under' door." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006). Instead, they must demonstrate a federal issue that "is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

## B.

Neither of defendants' proposed federal issues qualifies as substantial federal questions under *Grable*.

### 1.

Defendants first claim that Dinvaut's request that the state court order restoration of the coastal zone, to the extent feasible and practical, involves a substantial federal question given the wide array of federal laws and regulations governing the use of the coastal zone as well as the likely need to obtain some federal permits to complete some of the restoration work. Defendants base their argument on *Board of Commissioners of Southeast Louisiana Flood Protection Authority v. Tennessee Gas Pipeline Co.*, in which the Fifth Circuit held that state law claims in another coastal zone lawsuit were removable under *Grable*. *See* 850 F.3d 714 (5th Cir. 2017).

*Tennessee Gas* is not controlling, however. Federal jurisdiction in *Tennessee Gas* arose because the plaintiff's negligence and nuisance claims could not "be resolved without a determination whether multiple federal statutes create a duty of

6

care that does not otherwise exist under state law." 850 F.3d at 723. Here, by contrast, Dinvaut's cause of action is based entirely on the State and Local Coastal Resources Management Act, as well as the Act's implementing regulations. So even defendants concede—as they must—that they are pursing a "different theory of federal jurisdiction" than the one approved by the *Tennessee Gas* court. R. Doc. No. 16, at 26.

The differences between this matter and *Tennessee Gas* are determinative. Even assuming that the need to obtain federal approval for portions of the remedy constitutes a federal issue, defendants neither demonstrate an actual dispute regarding any particular question of federal law nor that those disputes would be substantial.

Defendants are woefully non-specific as to the precise disputed issue of federal law between the parties. Simply asserting that the subject matter of the suit implicates a federal regulatory scheme is insufficient to establish a relevant dispute of federal law. *See St. Bernard Parish v. Atl. Richfield Co.*, No. 16-16294, 2017 WL 2875723, at *2 (E.D. La. 2017) (explaining that "such nebulous allegations fail[] to satisfy the standard for federal question jurisdiction"). After all, were it otherwise, nearly *every* case would be a federal case given how thoroughly modern life is regulated by the federal government.

Further, even if the defendants could establish an actual dispute of federal law between the parties, defendants do not establish that the dispute is substantial. To judge whether a dispute is substantial, this Court considers a host of issues including:

whether resolution of the issue in state court would undermine the development of a uniform body of federal law, whether the federal issue is a pure issue of law that would have application to other cases, and whether resolution of the issue has broad significance to the federal government. *See Tenn. Gas*, 815 F.3d at 724; *see also Gunn*, 568 U.S. at 260-64; *Empire Heathchoice*, 547 U.S. at 699-701.

This case does not qualify. In particular, the state court remedy—whether it be damages or a court order to engage in some sort of coastal zone restoration—will not obviate the need to apply for and obtain the relevant permits from the relevant agencies. And to the extent that either the EPA or the Corps concludes that any restoration effort does not comply with federal law, then both entities will be free to pursue the very same federal remedies—backed by the power of the Supremacy Clause—that they would in any other case. So the federal regulatory scheme is safe regardless of whether the instant case is heard in state or federal court. Therefore Dinvaut's requested remedy cannot give rise to federal jurisdiction under *Grable*.

**2.**

Defendants also argue that this case presents a removable federal question insofar as Dinvaut seeks to impose liability for activities conducted pursuant to a federal permit. However, defendants do not establish that the state court will have to consider—in any way—whether a federal permit has been violated to determine whether there has been a violation of the State and Local Coastal Resources Management Act.

First, defendants suggest that insofar as the petition discusses events before the enactment of the State and Local Coastal Resources Management Act, Dinvaut's cause of action *must* be based on something other than the Act. However, defendants misconstrue the petition. Actions taken before the Act went into force are relevant to whether a particular use is grandfathered into the Act's regulatory scheme. *See* La. R.S. 49:214.34(C)(2) ("Individual specific uses legally commenced or established prior to the effective date of the coastal use permit program shall not require a coastal use permit."). So the mere fact that the petition discusses events prior to the Act's effective date does not establish that the state court will need to consider any question of federal law when determining defendants' potential liability under the Act. Instead, all it establishes is that Dinvaut intends to show that defendants' activities before the Act did not comply with various Louisiana laws and regulations concerning oil exploration in effect before the Act came into force, and therefore such activities cannot be grandfathered in under the Act.

Second, defendants suggests that certain cross-references to federal permits in the state permit files at issue indicate that federal standards must govern defendants' liability under the Act. But Judge Barbier has already considered and rejected this argument, *see Atl. Richfield Co.*, 2017 WL 2875723, at *3-5 ("Whether [Louisiana's laws] have been violated can be determined without referring to any federal standards. . . . There is no federal question involved in this case."), and this Court sees no reason to reach a different result.

\* \* \*

Defendants have not demonstrated a federal issue on the face of the petition that would support removal.  Therefore, this case will be remanded, though the uncertainty of this entire exercise—as well as the accompanying time and expense—cannot help but prompt the question of whether the federal courts would be better off with a jurisdictional test that looks more like a Rothko and less like a Pollock.  *See Grable*, 545 U.S. at 321 (Thomas, J., concurring) ("Jurisdictional rules should be clear.").

## IV.

Accordingly,

**IT IS ORDERED** that the motion to remand is **GRANTED**.  This case is **REMANDED** to Division A of the 40th Judicial District Court for the Parish of St. John the Baptist.

New Orleans, Louisiana, August 15, 2017.

_____
LANCE M. AFRICK
**UNITED STATES DISTRICT JUDGE**